IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIE DOUGLAS MASSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV965 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Willie Douglas Massey, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying his claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The Court has before it the certified administrative record and cross-motions for judgment.

### I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI on November 2, 2009 alleging a disability onset date of February 2, 2000.[1] (Tr. 20, 218-222.) The applications were denied initially and again upon reconsideration. (Id. at 120-27, 136-43.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (Id. at 145-46.) At the April 18, 2012 hearing were Plaintiff, his attorney, and Plaintiff's mother. (Id. at 40-72.) A

---

[1] Transcript citations refer to the administrative record. (Docket Entries 9-10.)

vocational expert ("VE") also appeared telephonically. (*Id.*) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 20-35.) Plaintiff requested that the Appeals Council review the ALJ's decision. (*Id.* at 14.) On August 30, 2013, it denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. LEGAL STANDARD

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute

2

its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

### III. DISCUSSION

Plaintiff raises four issues. First, he contends that the ALJ erred by giving little weight to the opinion of Dr. Joseph Appollo. (Docket Entry 14 at 3.) Second, he contends that the ALJ did not develop the record and did not mention favorable evidence. (*Id.* at 6.) Third, he asserts that the ALJ erred in his RFC finding and erred further by framing a hypothetical question to the VE that failed to account for his low IQ. (*Id.* at 7.) Last, Plaintiff contends that the ALJ erred by disregarding his low GAF scores. (*Id.* at 9.)

**A. Dr. Appollo**

Plaintiff contends that the ALJ committed reversible error in giving "little weight" to the medical opinion of Dr. Joseph Appollo. (*Id.* at 3-5.) Dr. Appollo conducted a consultative evaluation of Plaintiff on January 22, 2010. (Tr. at 423-435.) Accordingly, he

3

conducted a series of tests, including the Woodcock Johnson Tests of Achievement, the Wide Range Assessment of Memory and Learning, and the Wechsler Adult Intelligence Scale ("WAIS"). (*Id.*) All test results were "very low." (Tr. 433.) Dr. Appollo concluded that Plaintiff "may have difficulty understanding, retaining and following instructions, but should be reviewed with any previous academic records." (*Id.* at 434.) He concluded further that Plaintiff "can attend for only short periods of time," "can relate to others," and "does not appear to be able to handle stress." (*Id.*) While noting Plaintiff's very low test scores, Dr. Appollo also stated they should be reviewed in light of his medical or academic records and that "[p]oor motivation needs to be ruled out." (*Id.* at 433.) Plaintiff was diagnosed with rule out cognitive disorder, not otherwise specified; rule out mild mental retardation; and was assigned a global assessment of functioning ("GAF") score of 50. (*Id.* at 434.)

The ALJ afforded Dr. Appollo's opinion little weight, essentially discounting the low scores Plaintiff received on the administered tests, because these results were inconsistent with his prior performance in school. (Tr. 30.) Plaintiff contends that the ALJ's reasons for discounting Dr. Appollo's opinion are "unsustainable." (Docket Entry 14 at 4.) He argues that Dr. Appollo's opinion is corroborated by his school IQ scores and that the ALJ erred by failing to specifically mention them. (*Id.* at 5.)

An ALJ must evaluate all of the medical opinions in the record in light of: the examining relationship, the treatment relationship, the degree to which the opinion relies on relevant evidence, the consistency of the opinion with the record as a whole, the specialization of the source of the opinion, and other factors brought to the ALJ's attention. 20 C.F.R. §

4

404.1527(c), 416.927(c). A medical source's opinion must be both well-supported by medical signs and laboratory findings as well as consistent with other substantial evidence in the case record. *Id.* "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 590 (citation omitted); *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ's decision to give "little weight" to Dr. Appollo's opinion is supported by substantial evidence. The record indicates that Plaintiff, born in 1970, graduated from high school in 1988, was not in special education classes, and did "fairly well" in school.[2] (Tr. 44, 56, 59-61, 281, 423 ("DOB 09/29/1970").) The ALJ correctly pointed to this as a sufficient reason to discount Dr. Appollo's test results, especially given that Dr. Appollo noted his concerns about possible "poor motivation" and his suggestion that Plaintiff's test results be considered in light of his school record. The ALJ also took into consideration Dr. Appollo's report in light of the medical evidence of record. (Tr. 24.) The ALJ concluded that Plaintiff's mental limitations were no more than mild to moderate and were adequately

---

[2] Plaintiff contends that the ALJ erred in finding that he was an honor student. (Docket Entry 14 at 5.) There is evidence in the record that Plaintiff was on the honor roll. (Tr. 290, 320.) Any error, if this is indeed an error, in the distinction between being on the honor roll and being an honor student is at most harmless, especially in light of evidence that Plaintiff did reasonably well in mainstream classes. And, in any event, even without clarity on this specific issue, the ALJ did not err in giving little weight to Dr. Appollo's opinion. Plaintiff's high school performance was one of the many issues in the record the ALJ weighed in determining which evidence to give greater weight to. "The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter*, 993 F.2d at 34.

5

captured by the RFC. (Tr. 24-25, 28-30, 47.) For example, one factor the ALJ considered relevant was the absence of references to any mental impairments in Plaintiff's prison medical records, which is noteworthy because Plaintiff spent the preponderance of his alleged POD incarcerated. (Tr. 29, 47.)

Nevertheless, Plaintiff points to prior IQ scores he received in the late 1970's and early 1980's and faults the ALJ for not explicitly referencing them in his decision. However, the ALJ stated repeatedly that she considered the entire record, and the Court may rely on these statements.[3] (Tr. 20, 22, 25, 30.) Likewise, an ALJ need not provide a written evaluation for each document.[4] The ALJ's "failure" to discuss all the exhibits, including those mentioned by Plaintiff, in a 500 plus page record is not error. The regulations also suggest that IQ tests administered decades ago before a claimant was sixteen—as was the case here—are unreliable and have long since grown stale.[5] And, setting that aside, the older IQ scores are generally *higher*—and often considerably higher—than the IQ scores Plaintiff received from Appollo.

Yet, even setting this aside, the non-examining state agency physicians also considered these other IQ scores and recommended an RFC limited to simple, routine repetitive tasks, which is consistent with—though *less* restrictive than—the RFC ultimately adopted by the

---

[3] *See Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *6 (W.D.N.C. Nov. 18, 2010) (unpublished) (*citing Rappaport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)).

[4] *See, e.g., Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Mellon v. Astrue*, No. 4:08-2110-MBS, 2009 WL 2777653, at *13 (D.S.C. Aug. 31, 2009) (unpublished); *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct 21, 2008) (unpublished).

[5] *See e.g., Younce v. Colvin*, 5:12CV187–RLV, 2014 WL 538799, at *5 (W.D.N.C. Feb. 11, 2014) (finding IQ scores obtained before claimant was 16 invalid under 20 C.F.R. pt. 404, subpt. P, app'x 1 § 112.00(D)(10)); *Gibson v. Astrue*, No. 2:10CV00060, 2011 WL 6888532, at *2 (W.D.Va. Dec. 29, 2011) (same).

6

ALJ. (Tr. 77, 90, 101 74-84, 87-93, 96-119.) The ALJ indicated that she had considered the medical opinions of these experts, stated that she "generally agree[d] with them," and gave their opinions "significant weight." (Tr. 30.) The logical implication here is that the ALJ found that these older IQ scores did not change the disposition of the RFC or the disability determination.

Plaintiff also states that he was prejudiced by this perceived error, but fails to meaningfully explain how. Plaintiff does not contend that he meets a listing at step three for an intellectual disability and does not state what additional limitation should have been included in his RFC. Dr. Appollo indicated Plaintiff may have difficulty understanding, retaining, and following directions, but can attend for short periods of time and relate to others, and does not appear able to handle stress. (Tr. 434.) In comparison, the ALJ found that Plaintiff could perform simple, routine, repetitive tasks and was able to tolerate only routine changes in a non-production work environment with limited exposure to noise with no contact with the public and only occasional contact with co-workers or supervisors. (Tr. 25.) Given that the ALJ appears to have accounted for Dr. Appollo's proposed limitations, even assuming it was error for the ALJ not to mention the older IQ scores, which it was not, prejudice is absent.

Finally, in attributing little weight to Dr. Appollo's opinion, the ALJ indicated that absent a new brain injury causing a precipitous drop in his IQ, Appollo's test results appeared invalid. (Tr. 30.) *See, e.g., Clark v. Colvin*, No. 1:12CV127, 2014 WL 2112579, at *4 (M.D.N.C. May 20, 2014). To understand this conclusion, it is important to know that at various points

7

in the record, Plaintiff and his mother indicate that what ultimately turned out to be a lipoma on Plaintiff's head was actually a brain tumor that caused a deterioration in his cognitive abilities. Importantly, Plaintiff asserts, and testified under oath, that he did not have these mental limitations prior to 2009. (Tr. 48-50, 56, 61, 283, 552-53.) Plaintiff, through counsel, now concedes that he did not have brain surgery, nor did he have a brain tumor. (Docket Entry 14 at 4-5.) In light of all this, the ALJ's conclusion that a routine removal of a benign cyst from Plaintiff's head would not account for the low test scores Plaintiff received from Dr. Appollo is supported by substantial evidence (Tr. 29-30 *referencing* 393-96, 552-53.)

### B. The Record

In an overlapping argument, Plaintiff next contends that the ALJ erred by failing to develop the record because he did not mention a statement by Plaintiff's mother that he was in special education classes. (Docket Entry 14 at 6.) This argument is not persuasive.

The ALJ is required "to explore all relevant facts and inquire into the issues necessary for adequate development of the record . . . ." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). When the evidence submitted by the claimant is inadequate as to whether the claimant is disabled, the ALJ cannot rely on that evidence alone. 20 C.F.R. §§ 404.1512(d), 416.912(d). "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

Plaintiff faults the ALJ for "failing to mention" he was in special education classes. (Docket Entry 14 at 6-7.) However, substantial evidence supports the conclusion that

Plaintiff was not in special education classes and that he did reasonably well in school. (*See e.g.*, Tr. 56, 59-61, 281, 286, 290, 424.) Plaintiff himself reported to the agency that he did not take special education classes. (Tr. 281.) He later reported the same to Dr. Appollo. (Tr. 424.) Plaintiff's mother reported to an agency employee that Plaintiff had not been in special education classes. (Tr. 286.) She later reported to the agency that Plaintiff was "very smart" and "always made honor roll in school." (Tr. 290.)

Yet, Plaintiff points to a notation by Dr. Swati Dakoriya stating that "Mother reports that [Plaintiff] was in special-ed classes and he did fairly in school. He was a bright and intelligent kid." (Tr. 455.) Defendant contends that this statement appears to contain typographical errors. (Docket Entry 20 at 10-11.) Plaintiff, on the other hand, argues the ALJ should have developed this matter further. However, the ALJ *did* investigate Plaintiff's academic record further by asking both Plaintiff and his mother how Plaintiff performed in school. (Tr. 48, 56, 59-61.) Plaintiff testified he graduated from high school in 1988 and did fairly well. (Tr. 44, 56, 59-61, 281.) He attributed his lapses in remembering, concentration, reading, and understanding English to his 2009 scalp surgery for lipoma removal. (Tr. 48-49, 56, 61.) When questioned by the ALJ, Petitioner's mother likewise attributed these issues to his scalp surgery and said that in school he had been "normal" and "a very smart guy." (Tr. 58-59.) When examined by Plaintiff's counsel, Plaintiff's mother stated that Plaintiff was a "fairly good student" and that he made "decent grades." (Tr. 60-61.) At the administrative hearing, counsel did not ask Plaintiff or his mother whether Plaintiff was in special education classes. In light of the above, the ALJ satisfied his duty to develop the record. The record

9

contains ample evidence and discussion of this issue.

C.     GAF Scores

Plaintiff contends that the ALJ erred by disregarding his low GAF scores[6] on the ground that he continued to drink alcohol. (Docket Entry 14 at 9.) As explained below, Plaintiff has demonstrated, at most, harmless error.

"A GAF score is intended to be used in treatment decision and may have little to no bearing on . . . occupational functioning." *Love v. Astrue*, No. 3:11-CV-014, 2011 WL 4899989, at *4 (W.D.N.C. Sept. 6, 2011) (unpublished opinion), *adopted* 2011 WL 4899984 (W.D.N.C. Oct. 14, 2011). Consequently, "it is unsurprising that courts have concluded that 'the failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination.'" *Clemins v. Astrue*, No. 5:13-CV-00047, 2014 WL 4093424, at *1 (W.D. Va. Aug. 18, 2014) (*quoting Paris v. Colvin*, No. 7:12-CV-00596, 2014 WL 534057, at *6 (W.D. Va. Feb. 10, 2014); *Love*, 2011 WL 4899989, at *5 (quotation marks omitted). Additionally, reversal on the grounds that the ALJ failed to consider a GAF score "is particularly inappropriate 'where the ALJ fully evaluated the records and treatment notes upon which the GAF scores were based.'" *Id.* (*quoting Paris*, 2014 WL 534057, at *6).

Here, the ALJ considered the entire range of Plaintiff's GAF scores, noting:

> His GAF scores range from 50-55 to 35. Dr. Appollo reported

---

[6] The GAF is a scale ranging from zero to one hundred used to rate an individual's psychological, social, and occupational functioning. *See* Am. Psychiatric Assoc, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th Ed., Text Revision 2000). The Fifth Edition of the DSM published in 2013 discontinued use of the GAF, in part because of "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed., Am. Psychiatric Ass'n 2013).
10

> his GAF was 50 (Exhibit 5F). Although the claimant's GAF
> score of 35 indicates major impairments in work/school/family
> relations, there is evidence that the claimant drinks alcohol. His
> scores of 50-55 reflect generally moderate symptoms. It is
> noteworthy that GAF scores range from 41-50 (serious
> symptoms) and 51-60 (moderate symptoms). The claimant's
> chronic alcohol abuse probably contributes to his symptoms, as
> well as his situational stressors. Indeed, GAF scores are only
> estimations of an individual's functioning. Therefore, no more
> than mild to moderate limitations can be inferred from the
> moderate mental condition.

(*Id.* at 29.) The ALJ stated further that "[t]he undersigned has considered the low GAF scores in the record, but the claimant continues drinking alcohol and those scores appear to be based on what he said and not on any objective criteria." (*Id.* at 30.)

As explained above, one of the reasons the ALJ discounted Plaintiff's low GAF scores is because they "were based on what he said and not on any objective criteria." This is a proper rationale for discounting GAF scores and is borne out by the record here, given that the GAF scores at issue are not given meaningful discussion in the treatment notes and also largely appear to be based on Plaintiff's subjective reporting.[7] (Docket Entry 14 at 9-12 *referencing* Tr. 398, 520-21, 533, 538, 542, 548.) *See Morris v. Barnhart*, No. 03–1332, 2003 WL 22436040, at *4 (3d Cir. Oct. 28, 2003) (*citing Craig*, 76 F.3d at 590 n.2); *Hunter v. Colvin*, No. 1:10CV401, 2013 WL 2122575, at *7 (M.D.N.C. May 15, 2013); *Oliver v. Comm'r of Soc. Sec.*, 415 Fed. App'x. 681, 684 (6th Cir. 2011).

The ALJ also evaluated all of the medical records upon which the GAF scores were

---

[7] Plaintiff also appears to allege that the fact that the physicians on whom the ALJ relied never mentioned Plaintiff's low GAF scores makes the ALJ's reliance on those physicians' opinions "highly suspect, if not immediately reversible." (Docket Entry 14 at 9.) Plaintiff cites no authority for this proposition and the Court is unaware of any.

11

based and took them into consideration in setting forth Plaintiff's RFC. (Tr. 28-30.) While Plaintiff clearly asserts he is disabled in light of his GAF scores, he does not meaningfully take issue with any of the ALJ's findings or conclusions as to the specific medical records on which they are based. Plaintiff's argument fails for this reason alone.

Additionally, where alcohol and/or drug addiction is a contributing factor material to the determination of disability, and the claimant would not be disabled but for the drug addiction or alcoholism, then the claimant is not entitled to disability benefits. *See* 42 U.S.C. § 423(d)(2)(C). Here, the record demonstrates a history of cannabis, cocaine, and alcohol use. A physical examination record from June 2009, shows that Plaintiff reported that he had been drug-free for seven years. (Tr. 396.) An assessment from Daymark Recovery Services in June 2010, indicates polysubstance dependence in full-sustained remission. (Tr. 452.) On October 4, 2010, Plaintiff presented to the emergency room after he had been drinking alcohol and was exhibiting anger and bizarre behavior. (Tr. 458.) He was discharged on October 6, 2010, and referred for psychiatric treatment. (Tr. 462.) On October 7, 2010, Plaintiff presented to Daymark Recovery Services and reported that he was depressed because he could not find a job. (Tr. 525, 530.) His therapist noted that he was self-medicating his depression with alcohol. (Tr. 530.) In March 2012, Dr. Daniel Johnston assessed that Plaintiff's polysubstance dependence was in remission. (Tr. 548.) Consequently, even if Plaintiff's GAF scores were sufficient to demonstrate he was disabled, which they are not, substantial evidence supports the ALJ's conclusion that alcohol use may have affected Plaintiff's GAF scores.

12

Finally, as with the ALJ's purported failure to consider past IQ scores, Plaintiff fails to meaningfully explain what further limitations his GAF scores would have justified. Consequently, even if the ALJ somehow failed in evaluating Plaintiff's GAF scores, which is not the case, Plaintiff has not demonstrated prejudice.

**D. The RFC**

Last, Plaintiff contends that the ALJ erred by making an RFC finding, and framing a hypothetical to the VE, that failed to account for his mental limitations stemming from his low IQ, particularly "the frequency and duration of [Plaintiff's] concentrational lapses." (Docket Entry 14 at 7.)

Here, the ALJ stated to the VE:

> Assume the existence of an individual who is 41 years old. Thus, is considered to be a younger individual. Has a high school education, past work as described. Assume further this individual has the residual functional capacity to perform work at all exertional levels. However, the person—the individual should avoid concentrated exposure to hazards. There should be no more than moderate exposure to noise. The work should be unskilled—simple, routine, repetitive in nature. No contact with the public. Occasional contact with co-workers and supervisors for the essential functions of the position. Routine changes in the work environment. Should be a non-production oriented job.

(Tr. 69.) When asked if that person could do any work besides Plaintiff's past work, the VE answered that "there would be unskilled non-production work at the light level" as a cleaner, laundry worker, or vehicle cleaner. (*Id.* at 69-70.)

VE testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC.

13

*See Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). Additionally, after the briefing was filed in this case, the Fourth Circuit Court of Appeals decided *Mascio v. Colvin*, which—in pertinent part—concluded that a claimant's limitations in concentration, persistence, and pace are not addressed by a hypothetical limitation to simple, routine tasks, or unskilled work. 780 F.3d 632, 638 (4th Cir. 2015). Neither party has supplemented the briefing by raising *Mascio* here, and the undersigned notes that while there are similarities between this case and *Mascio*, *Mascio* appears factually distinct from the facts of this case.

More specifically, at step three in this case (Tr. 24.), as in *Mascio*, 780 F.3d at 638, the ALJ concluded that there were moderate limitations in concentration, persistence, or pace. There is a further similarity to *Mascio* here as well, because the ALJ limited Plaintiff to simple, routine, repetitive work (Tr. 25), whereas the ALJ in *Mascio* concluded that the plaintiff could perform unskilled (*i.e.*, simple and routine) work, *Mascio*, 780 F.3d at 638 n.7. The differences end here, however, because unlike *Mascio*, the ALJ in this case also limited Plaintiff's exposure to noise; his contact with the public, co-workers, and supervisors; changes in his work environment; and his production pace. (*Id.*) In light of all this, the undersigned concludes that the ALJ's RFC was based on substantial evidence of record, and his hypothetical to the VE mirrored his RFC determination and properly captured Plaintiff mental limitations. (Tr. 69.) Accordingly, the VE's testimony constituted substantial evidence upon which the ALJ appropriately relied at step five.

## IV. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's motion for judgment on the pleadings (Docket Entry 13) be **DENIED**, Defendant's motion for judgment on the pleadings (Docket Entry 19) be **GRANTED,** and the final decision of the Commissioner be upheld.

June 19, 2015

Joe L. Webster
**United States Magistrate Judge**

15